(April 27, 1910.)

## GEORGE T. MILLER, Administrator of the Estate of CARY A. CORYELL, Deceased, Appellant, v. LEWISTON NA- TIONAL BANK et al., Respondents.

[108 Pac. 901.]

ADMINISTRATOR—CLAIMS AGAINST ESTATE—ALLOWANCE—JURISDICTION OF PROBATE COURT—OBJECTIONS OF HEIRS TO REPORT OF ADMIN- ISTRATOR—HEARING BY PROBATE COURT—FORM OF JUDGMENT IN. THE DISTRICT COURT ALLOWING SUCH CLAIMS—LIMITATION OF AC- TION—CONTRACT OF GUARANTY—LIABILITY OF DECEASED THEREON —QUALIFICATION OF ADMINISTRATOR TO ALLOW CLAIMS.

(Syllabus by the court.)

1. Where an administrator has tendered his resignation and makes his final report as such administrator, an order made by the probate judge approving such report and discharging him as ad- ministrator and appointing his successor approves all that is con- tained in such final report, but does not approve and allow claims. against the estate which are under contest upon objections of the heirs to a former report listing such claims, and the allowance of which claims upon the hearing of the former report was expressly ordered by the probate judge to be continued for further considera- tion.

2. Where an administrator allows certain claims against the es- tate and thereafter renders a report listing such claims, and heirs. of the deceased object to such report and the allowance of such claims, on the ground that the administrator is interested in such claims as a joint debtor with the decedent, and upon the hearing of such report the probate court approves the same except as to. such claims and continues such claims for future consideration,. and the administrator tenders his resignation as administrator and renders his final report, and the probate court accepts such resigna- tion and appoints his successor, the approval by the probate court. of the final report of such administrator does not approve and allow such contested claims.

3. Where claims are pending against an estate before the pro- bate court, upon an order setting aside their former allowance by the administrator and the probate judge upon objections by the heirs, the probate judge is not required to indorse upon said claims: his allowance or rejection of the same within ten days after such. order, nor does his failure to do so amount to a rejection of said:

claims and defeat his jurisdiction to set said claims for hearing upon the objections made by the heirs.

4.  Where claims are filed against an estate and objections are made by heirs of the decedent to their allowance, and such objections are heard and tried by the probate court and thereafter appealed to and heard and tried in the district court, a judgment rendered in the district court against the administrator of said estate for the aggregate amount due upon said claims, with direction that said judgment be paid by the administrator in due course of administration, is in proper form and not erroneous.

5.  The provisions of Rev. Codes, sec. 4071, were not intended to shorten the time within which an action may be brought, under the general provisions of the statute, but were intended to extend such time in certain cases; that is, where at the time of a party's death there is not one year left of the period of limitation prescribed by the general statutes after the issuing of letters, the claimant shall have at least one year therefrom; and to this extent this section extends rather than shortens the period. If, however, at the time of issuing letters more than one year is left of the period of limitation prescribed by the general statute, then this statute does not shorten that period and in such case has no effect.

6.  The fact that an administrator allows a claim against the estate, based upon promissory notes upon which the administrator and the deceased guaranteed the payment, does not render void or uncollectible such claim.

7.  A contract of guaranty indorsed upon the back of a promissory note in the following words, "For value received I hereby guarantee the payment of the within note and waive protest, demand and notice of nonpayment thereof," is a several as well as a joint obligation of each person who executes such contract.

8.  Such contract of guaranty being several, the obligation of each person who executed such guaranty becomes absolute upon default of the maker of such note.

9.  Under the provisions of such contract of guaranty, the holder of such note was under no obligation to pursue the maker or use any diligence whatever to enforce the collection of said note against the maker, or to give notice to the guarantors of the nonpayment of said note.

10.  The fact that an administrator, jointly liable with the deceased upon a contract of guaranty, allows a claim against such estate founded upon such contract of guaranty, does not show or tend to show a collusion between the administrator and the claimant to allow or enforce such claim against the estate in fraud of the rights of the heirs of said estate.

11.  The holder of a promissory note is under no obligation in equity to pursue the maker of such note rather than a guarantor

of the payment of such note, upon default being made in the pay·
ment of such note according to its terms, but may rely wholly upon
the contract of guaranty and resort to such in enforcing the pay-
ment of such obligation.

APPEAL from the District Court of the Second Judi-
cial District, for Nez Perce County.  Hon. Edgar C. Steele,
Judge.

From a judgment of the district court allowing certain
claims against an estate on appeal from the probate court,
this appeal is taken.  *Affirmed.*

John O. Bender, for Appellant.

The claims of the Lewiston National Bank were finally and
conclusively adjudicated by the probate court in the orders
of May 25, 1908, settling the final account and finally accept-
ing the resignation of J. Howard Howe, as administrator of
said estate, and finally discharging him as such administrator.
(Sec. 5401, Rev. Codes; *American Bonding Co. v. People,*
46 Colo. 394, 104 Pac. 83, and cases cited; *State v. Bilby,* 50
Mo. App. 162; Brandt, Suretyship and Guaranty, sec. 532;
*Veach v. Rice,* 131 U. S. 293, 9 Sup. Ct. 730, 33 L. ed. 163;
*Waring v. Lewis,* 53 Ala. 621; *Ingram v. Maynard,* 6 Tex.
130; *Francis v. Northcote,* 6 Tex. 185; *State v. Stephenson,*
12 Mo. 182; *Jennings v. Le Breton,* 80 Cal. 8, 21 Pac. 1127;
*Tobelman v. Hildebrandt,* 72 Cal. 313, 14 Pac. 20; *Reynolds
v. Brumagim,* 54 Cal. 254; *Luco v. Commercial Bank,* 70 Cal.
339, 11 Pac. 650; *Haynes v. Meeks,* 20 Cal. 288.)

It is certain that the probate court, either by its order of
April 30th or by its order of May 25th, finally accepted the
resignation of Howe, discharged him as such administrator
and revoked his letters; and it is conclusively presumed that
every fact existed which was necessary to support such order
unless the same is negatived by the record.  (*Lucas v. Todd,*
28 Cal. 185; *McKenna v. Cosgrove,* 41 Wash. 332, 83 Pac. 241;
23 Cyc. 1306.)

The allowance of said claims by J. Howard Howe was a
nullity, because he was a coguarantor with the deceased for

their payment and was a large stockholder in the lumber company, the principal obligor of said claims, and therefore his interest was adverse to the interest of the estate, and such allowance by the settlement of his accounts wherein they would be passed upon would be equivalent to the payment of his obligation. (*Henderson v. Ayres,* 23 Tex. 96; *Clark v. Crosswhite,* 28 Mo. App. 34; *State v. Bidlingmaier,* 26 Mo. 483; *Estate of Crosby,* 55 Cal. 578; *Estate of Hill,* 167 Cal. 238, 7 Pac. 664; *Hobson's Estate,* 40 Colo. 332, 91 Pac. 931.)

It is absolutely necessary for a creditor to have his claim allowed by an administrator, who is qualified to allow it within the time provided by statute, and such an allowance is jurisdictional, without which neither the probate court nor the district court on appeal has any authority or power to allow nor to bind the estate to pay. (*Hobson's Estate, supra; Alvator v. First National Bank,* 45 Colo. 528, 103 Pac. 378.)

The facts show conclusively that the bank and Howe by their acts were attempting to defraud the estate of Coryell under the forms of the law and through legal proceedings; and that for the court to order the payment of these claims will effectuate the fraud. (*Warren v. Union Bank,* 157 N. Y. 259, 68 Am. St. 777, 51 N. E. 1038, 43 L. R. A. 256; Perry on Trusts, 5th ed., sec. 427; *White v. Penuel,* 6 Penne. (Del.) 272, 66 Atl. 362; *Olney v. Conanicut Land Co.,* 16 R. I. 597, 27 Am. St. 767, 18 Atl. 181.)

The contract of guaranty when taken into consideration with the surrounding facts is a joint obligation and not a joint and several obligation of said guarantors. (*Briggs v. Latham,* 36 Kan. 205, 13 Pac. 131; *Bank v. St. Johnsburg & L. C. R. Co.,* 40 Fed. 425; 7 Cyc. 656; *Alpaugh v. Wood,* 53 N. J. L. 638, 23 Atl. 263; *Brady v. Reynolds,* 13 Cal. 32; *Bank v. Morse,* 129 Cal. 239, 61 Pac. 1088.)

James E. Babb, and John R. Becker, for Respondents.

When the account comes on for hearing, the claim comes on also for hearing, although the account only was set for hearing *eo nomine,* and when an order is entered approving

such account, although it contains nothing about the claims that are listed with and as a part of the account, the claims are also allowed and approved, although they are not mentioned otherwise than by an order simply approving the account.    (*McDougal's Estate*, 146 Cal. 191, 79 Pac. 878.)

The probate court retains entire probate jurisdiction and control over the matter, even in those cases where the case is sent to an action in an independent court; because of the provision in section 5474 to the effect that a judgment of an independent court in such an action has only the same effect as the allowance of the administrator and the probate judge, which may be afterward reviewed by the probate court.    (*In re More's Estate*, 121 Cal. 635, 54 Pac. 148; *Hall v. Cayot*, 141 Cal. 13, 74 Pac. 299; *Wells v. Robinson*, 13 Cal. 134; *Fallon v. Butler*, 21 Cal. 24, 81 Am. Dec. 140.)

Howe was neither a necessary nor a proper plaintiff or claimant on any of the claims of the appellant that were presented to him as administrator.    He could not have received or receipted for any part of any of the claims.    At the time they were presented there was no state of facts under which by any possibility the claims could have been presented in the name of Howe against the estate.

In Indiana there is a statute similar to the Idaho statute construed in the case of *Wright v. Wright*, 72 Ind. 149.

The three guaranties on which claims were presented constituted joint and several obligations and not simply joint obligations.    (*Hunt v. Adams*, 5 Mass. 359; *Holman v. Gilliam*, 6 Rand. (Va.) 39; *Higgins v. Watson*, 1 Mich. 428; *Dart v. Sherwood*, 7 Wis. (523) 446, 76 Am. Dec. 228; *Mayor v. Ripley*, 5 La. 121, 35 Am. Dec. 175; *Wallace v. Jewell*, 21 Ohio St. 163, 8 Am. Rep. 48; *Maiden v. Webster*, 30 Ind. 317; *Leith v. Bush*, 61 Pa. 395; *Keller's Admr. v. McHuffman*, 15 W. Va. 64; *Ullery v. Brohm*, 20 Colo. App. 389, 79 Pac. 180; 1 Parsons on Contracts, 5th ed., 11; 2 Page on Contracts, sec. 1134; 1 Daniel on Neg. Instruments, 3d ed., 104; 14 Am. & Eng. Ency. of Law, p. 1160 et seq.)

The guaranties in question were not conditional, such as a guaranty of collection only, but were guaranties of payment

absolutely, and the holder owes no duty of diligence in collection. (*Roberts v. Hawkins,* 70 Mich. 566, 38 N. W. 575.)

One who, before maturity, unconditionally guarantees the payment of a promissory note, becomes absolutely liable upon default of the maker. The guarantor is not entitled to notice of the maker's default, and the mere neglect of the holder to pursue a remedy against the maker does not discharge the obligation of the guarantor. (*Hungerford v. O'Brien,* 37 Minn. 306,. 34 N. W. 161.)

Even if guarantors were indorsers only, they having expressly waived demand, notice and protest, are not entitled to diligence in collection under the uniform negotiable instruments law. (*Armstrong v. Slick,* 14 Ida. 208, 93 Pac. 775.)

STEWART, J.—On March 2, 1907, Cary A. Coryell died in Nez Perce county, this state, and on April 30, 1907, J. Howard Howe was appointed administrator with the will annexed. On November 6, 1907, there were presented to J. Howard Howe, as such administrator, claims in favor of the Lewiston National Bank as follows:

A note dated April 1, 1904, payable to the order of the said bank for the sum of $8,616.75 and interest, executed by C. W. Colby, J. Howard Howe and C. A. Coryell, on which note it was alleged there was still due the sum of $6,016.75 and interest.

A note dated December 29, 1905, payable to the order of said bank for the sum of $10,000 and interest, executed by the Colby-Coryell & Howe Lumber Company, and upon the back of which was written the following guaranty: "For value received I hereby guarantee the payment of the within note and waive protest, demand and notice of nonpayment thereof. C. W. Colby, J. Howard Howe, C. A. Coryell."

A note dated March 30, 1906, payable to the order of said bank for the sum of $10,000 and interest, executed by the Colby-Coryell & Howe Lumber Company, and indorsed with the following guaranty written on the back thereof: "For value received I hereby guarantee the payment of the within

note and waive protest, demand and notice of nonpayment thereof. C. W. Colby, C. A. Coryell, J. Howard Howe, Louis Diether.''

A note dated June 13, 1906, payable to the order of said bank for the sum of $5,000 and interest, executed by the Colby-Coryell & Howe Lumber Company, and upon the back of which was indorsed the following written guaranty: ''For value received I hereby guarantee the payment of the within note and waive protest, demand and notice of nonpayment thereof. J. Howard Howe, C. A. Coryell, Louis Diether, C. W. Colby.''

Thereafter and on November 16, 1907, said administrator indorsed upon each of said claims an allowance thereof, and on the same date they were presented to and indorsed as allowed by the probate judge. On November 21, 1907, said administrator returned an inventory and appraisement. On February 14, 1908, Howe filed an account which after notice was approved February 24, 1908, without objection. In this report is found the following recitation: ''All claims that have been presented against said estate are on file in said court except the claim in favor of the M. E. Church for $100, which has been returned to claimant for correction.'' On February 29, 1908, Fred D. Coryell filed a petition for the removal of J. Howard Howe as administrator. Citation was issued returnable March 10th. On March 10th the administrator filed an answer to the petition and asked leave to resign as such administrator. On March 14th he filed his final account and resignation. On the same day an order was entered setting said final account and resignation for hearing on March 23, 1908. On March 27th Norah B. McDole, Alice E. Denberger and Ella F. Phillips, children of the deceased Cary A. Coryell, filed exceptions to the account of the administrator, one of which was to the effect that the administrator had not returned a statement of claims against the estate containing names of creditors, nature of each claim, when due or when to become due, and whether allowed or rejected.

On April 4th the administrator filed a verified statement listing claims and containing the information on account of

which the exceptions to the administrator's account were made by McDole et al. Among the claims thus listed were the claims of the Lewiston National Bank heretofore referred to. On April 4th heirs of the deceased filed a motion to vacate and set aside the order made by the probate judge approving as allowed by the administrator the claims presented by the Lewiston National Bank. This motion was based upon the claim that J. Howard Howe, C. W. Colby, Louis Diether and C. A. Coryell, deceased, were jointly liable on said notes as guarantors, and were not jointly and severally liable or severally liable thereon, and for that reason upon the death of said Cary A. Coryell said obligations abated and the estate of the deceased was not liable; and J. Howard Howe, the administrator, C. W. Colby, and Louis Diether were alone liable for the payment of such claims.

On April 4th the probate court made an order to the effect that the account filed March 14th having been heard on the objections filed, said account is settled and approved and allowed, except that the validity and amount of the *claims allowed in favor of the Lewiston National Bank not having been passed upon or allowed or adjudicated by a foregoing order, and the validity thereof and the amount due thereon having been reserved for future consideration, and right having been reserved to the heirs, creditors and succeeding administrator to take such proceeding as they might deem proper against said claims of Lewiston National Bank, at any time prior to final settlement of the estate;* but that the foregoing statement shall not delay the final settlement of the account of the present administrator or the acceptance of his resignation.

On April 10th a citation was issued addressed to Howe, administrator, and James E. Babb and the Lewiston National Bank, directing them to show cause on April 20th why the motion of Phillips, Denberger, McDole and Coryell should not be allowed, and attached to the citation was a copy of the motion which in addition to the grounds stated in the original motion alleged that the claims were the claims of the administrator and had not been presented or allowed as provided

by law; and because the administrator was liable for the claim of $6,016.75 which had not been presented or allowed as provided by law. On April 23, 1908, the administrator filed an answer to the order to show cause, and the bank also filed an answer.

On April 30th the court made an order which among other things accepted the resignation of J. Howard Howe as administrator, and directed that upon the payment by him to his successor of the balance on hand as per a previous order, together with such other sums as shall have come into his hands since the filing of his final account, he should be discharged and George T. Miller appointed administrator as his successor; that the order vacating an order approving as allowed certain claims to the Lewiston National Bank and specifically reciting, "that the exhibit of J. Howard Howe, administrator, marked 'Statement of J. Howard Howe, administrator, with the will annexed, in re presentation and disposition of claims,' filed April 4th, 1908, in the probate court of Nez Perce county, Idaho, be and the same is hereby approved and allowed as rendered and presented save and except as to the items numbered respectively, 8, 9, 10 and 11 thereof, relating to claims of the Lewiston National Bank for, respectively, $10,000, $5,000, $10,000, and $6,016.75, which said items are not allowed and approved as rendered and presented by said administrator in said exhibit, but on which the order of approval has as to each thereof been vacated, set aside and held for naught, by an order this day made and entered herein."

On May 4th Howe filed a report showing the status of his account with such estate accompanied with a receipt of Miller, his successor, for all the property belonging to said estate. This report, however, contained no lists of any claims filed against said estate either allowed or rejected. No mention whatever was made of any claims filed or pending against said estate. The report is brief, recites the cash on hand, the sources from which it was received, the amount paid out, the amount claimed as commission and the amount of his certificate of deposit showing the balance in the hands of the ad-

ministrator.   Then follows a receipt from his successor.   An order was made fixing a day for settlement of this account and notice given as required by law, and on May 25th the probate court made an order approving and allowing the resignation of the administrator and the acceptance and approval of his final account.   No mention, however, was made in this order with reference to the claims of the Lewiston National Bank or whether the same had been allowed or rejected or were still pending against said estate.

The Lewiston National Bank appealed to the district court from certain orders made by the probate court, and the cause was heard in the district court and a judgment entered therein reversing certain orders of the probate court, and from which judgment the administrator appealed to this court.   The case was heard in this court and was reported in *Lewiston National Bank v. Miller*, 16 Ida. 201, 101 Pac. 723.   In that opinion this court held: "We, therefore, conclude in this case that the district court did not err in dismissing the appeal from the probate court, and that the claims of the Lewiston National Bank and the final account of J. Howard Howe, administrator, with reference to such claims are still pending in the probate court upon the objections and exceptions of the heirs and parties appearing against the allowance of such claims."

After the opinion was rendered in that case by this court, and on June 12, 1909, the probate court of Nez Perce county ordered that the claims of the Lewiston National Bank against said estate and that part of the account of J. Howard Howe as administrator with reference to said claims be set for hearing on June 28, 1909.   Objections were filed by children and heirs of the deceased Cary A. Coryell to the probate court proceeding further under the order that was made June 12, 1909.   This motion is quite elaborate but in the main assigned as a reason that it appears from the records that on May 25, 1908, Howe was finally discharged as administrator, and that he had rendered a full, true and correct final account; and because this court in the opinion heretofore referred to held that on April 30, 1908, the date when the orders of the probate court were made from which appeals were

taken, the claims of said bank were still pending against said estate, and under that decision the claims stood on April 30, 1908, the same as if they had been presented to said probate judge for his approval as provided by sec. 5466, Rev. Codes, and that said claims remained pending against said estate for a period of ten days or more after said April 30th, and said probate judge refused and neglected to indorse on said claims his refusal of allowance or rejection; and that his failure to act amounted to a rejection of said claims by operation of law, and inasmuch as the probate court thereafter, on May 25th, approved the final account of Howe and thereby disposed of said claims of said bank, and no appeal having been taken from said order, the probate court thereby lost jurisdiction of said matter without first vacating and setting aside said order of May 25th.

This matter came on for hearing before the probate court and the probate court made an order to the effect that the order of May 25, 1908, approving said final account of said Howe and discharging him as administrator of said estate, embraced all matters of said administrator in his administration of said estate which had not theretofore been passed upon by said court; that the claims of said Lewiston National Bank were not approved by the probate judge of said court at any time after the making of said orders on April 30, 1908, from which said appeal was taken to the district court, and that said claims upon the expiration of ten days from the date of said orders became rejected, under the provisions of sec. 5466 of the Rev. Codes, and stood rejected in said account of said administrator thereafter, and at the time of the approval of said account by said court on May 25, 1908; that said order of May 25th has not been vacated, but remains in full force and effect, and that the claims of the bank are denied, rejected and disallowed and the proceedings dismissed. From this order of the probate judge an appeal was taken to the district court.

When this case was called for trial in the district court the heirs of Coryell made a motion to dismiss the appeal on the following grounds: First, that this appeal is not taken.

from a judgment or order of the probate court granting, refusing or revoking letters testamentary or of administration or of guardianship, admitting or refusing to admit a will to probate; acceptance or in favor of the validity of a will or revoking the probate thereof, acceptance or in favor of setting apart property or making an allowance for a widow or child, acceptance or in favor of directing the partition, sale or conveyance of real property, settling an account of an executor or administrator or guardian, refusing, allowing or directing the distribution or partition of an estate or any part thereof, or the payment of a debt, claim, legacy or distributive share, confirming the report of appraiser, setting apart the homestead; second, that the probate court had no jurisdiction because the matter had been finally determined in the order of May 25th approving the final account of Howe. This motion was denied, and thereafter counsel for the heirs objected to the court hearing the matter on the ground that the court had no jurisdiction, because the matter had been determined by the decree of the probate court on May 25, 1908. This objection was overruled by the district court, after which counsel for the bank made a motion for judgment in favor of the bank and against George T. Miller, as administrator of the estate of Cary A. Coryell, deceased, upon transcript of the record from the probate court. This motion was also overruled. Whereupon, a transcript certified by the clerk of the probate court on September 28, 1909, and filed in the district court on the same day was offered and received in evidence. The bank also introduced in evidence each of the promissory notes heretofore referred to and upon which the bank based its claim against the administrator of the Coryell estate. No objection whatever was made to the introduction of these notes and no question urged as to the genuineness of the signatures. J. Howard Howe was then sworn as a witness and testified that the several claims referred to were presented to him as administrator of the estate of C. A. Coryell on November 16, 1907, and that the notes had not been paid and stated the amount due. F. W. Kettenbach was also sworn, and testified

that nothing had been paid upon these notes since their presentation to Howe as administrator.

The court made its findings of fact and conclusions of law and entered judgment in favor of the Lewiston National Bank v. George T. Miller, administrator *de bonis non* of the estate of Cary A. Coryell, deceased, for $38,865.58.

There was no error in overruling the motion to dismiss respondent's appeal from the probate to the district court. Sec. 2831, Rev. Codes, clearly authorized the appeal from the order made by the probate judge which in effect amounted to a disallowance of the respondent's claims against said estate.

The question upon which this appeal necessarily turns is: Was the objection made to the jurisdiction of the probate court to proceed under the order made on June 12, 1909, setting the claims of the Lewiston National Bank against said estate and the account of Howe as administrator for hearing on June 28, 1909, well taken? This objection was based upon two propositions: First, that this court having decided (16 Ida. 201, 101 Pac. 723) that the claims of the respondent were in the status of pending and undetermined claims on April 30, 1908, the date of the order from which the appeal was taken in that case, under the provisions of Rev. Codes, sec. 5466, the probate judge was required to approve or disallow said claims within ten days after such date, and the probate judge not having indorsed his approval of said claims within the said ten days, such neglect amounted to a rejection of said claims; second, the administrator having made a report on May 25, 1908, and subsequent to the date this court in the former opinion held that said claims were in the status of pending claims, and said report having been approved and no appeal having been taken from the order of approval, the action of the probate court in approving said account became final and conclusive as to such claims.

The status of these claims at the time the order of April 30, 1908, was made and from which the appeal was taken is very fully discussed in the former opinion in this case (16 Ida. 201, 101 Pac. 723, *supra*), and in that opinion this court says: "It appears that the Lewiston National Bank presented claims

to the administrator on November 6, 1907; that on November 16, 1907, the administrator allowed said claims, and on the same day they were presented to the probate judge and by him allowed. On the 14th of March the administrator filed his account and resignation and the same was set for hearing on the 23d of March. On April 4th, after exceptions had been filed to the failure of the administrator to return a list of claims, and after a motion had been filed to vacate the allowance of the claims by the court, the probate court filed an order to the effect that the claims of the Lewiston National Bank had not been passed upon and allowed and were reserved for future consideration; and on April 30th the resignation of the administrator was allowed, a new administrator was appointed and an order was made vacating and setting aside the order made by the probate judge on the 16th day of November, 1907, approving and allowing the claims of the Lewiston National Bank; and the report of Howe administrator, made on April 4, 1908, of a re-presentation and disposition of claims against the estate was approved, except as to the claims of the Lewiston National Bank which were not allowed and approved as rendered and presented by the administrator.''

It thus appears that the claims of the respondent were presented to J. Howard Howe, the original administrator, and by him allowed and that their allowance was approved also by the probate judge. Afterward objection being made to such allowance by the heirs of Cary A. Coryell, on the ground that Howe, as such administrator, was interested in such claims by reason of his contract of guaranty, and therefore not qualified to act as administrator or allow such claims as administrator. Upon this objection being made the probate court set aside the allowance previously made and continued such claims for future consideration, and upon this condition of the record this court held in the former opinion that on April 30, 1908, such claims were in the status of pending claims against such estate. The statute regulating the presentation of claims for allowance does not require that said claims shall be presented to each administrator who may act

as such during the administration of such estate. One pre-sentation of a claim is sufficient, and if objections are made to its allowance, it becomes a contested claim, but the statute does not require a re-presentation of such claim after it be-comes a contested claim.

The claims involved in this case were presented to both the administrator and the probate judge. The fact that the allowance indorsed upon such claims at the time of presenta-tion was afterward set aside by the probate judge upon objection being made by heirs of the deceased, would not necessitate any further presentation of such claims to the ad-ministrator or the probate judge. The indorsement of the time of presentation and the allowance or rejection of a claim is a requirement for the purpose of fixing the time from which the statute of limitations begins to run, but is not a require-ment which in any way affects the validity of the claim. One of the methods specifically pointed out by statute, by which the heirs of a decedent may contest a claim presented against the estate is by objections to the report of the administrator which shows the allowance of such claim; it was this method the heirs of Cary A. Coryell pursued in this case, and it was upon such procedure that this court held in the former opinion that the claims of the respondent were pending claims on April 30, 1908, the date of the order from which the appeal was taken in that case. Upon the second proposition it would seem that a discussion is wholly unnecessary, because if appel-lant is correct in his contention that the approval of the report made on May 25th disposed of the claims of the re-spondent, then the approval of such report approved such claims, and appellant has no standing in this court.

Counsel for appellant, however, contends that it was neces-sary for respondent to present the claims involved in this case to the administrator and the probate judge for indorse-ment within ten days after April 30, 1908, and that this not having been done, such claims were rejected by law and after that date stood as rejected claims, and when the report of May 25th was approved the rejection of such claims was also approved. But we do not believe that this contention is cor-

rect.   The report made on May 25th was merely a supple-mental report covering the acts of the administrator subse-quent to his former report, and in no way alluded to or gave an account of or reported on the claims of the respondent. The heirs had objected to Howe as administrator allowing such claims, and it was upon this objection that Howe ten-dered his resignation as such administrator, and the orders of the probate court show conclusively that the claims of the respondent were continued and no disposition whatever made of them for the express purpose of leaving such claims pend-ing for consideration by the administrator to be appointed as the successor of Howe.   For this reason no mention whatever was made of these claims in the final report of Howe made on May 25th and which was afterward approved.   The ap-proval of that account in no way disposed of the respondent's claims; they had been expressly reserved by the orders of the probate court for future consideration, and the report shows conclusively that no hearing was had subsequent to April 30th upon these claims or did the probate court take any action upon such claims subsequent to that date.   If, then, the report of the administrator made on May 25th did not embrace these claims, and the approval of such report in no way approved or disposed of such claims, then such claims were in the status of pending claims against said estate and in the same condi-tion in which they were on April 30, 1908, the date the order was entered from which the former appeal was taken.

Counsel for appellant, however, contends that either the order made on April 30th or the order made on May 25th re-voked the letters of administration issued to Howe and deter-mined every matter which was necessary to be determined, including the settlement of all the accounts of such adminis-trator including the claims of the respondent, and that such order released such administrator from any further duties to the estate and ousted the probate court of jurisdiction over him and over the affairs and accounts of his administration. Returning to the order of April 30th we find that such order accepted the resignation of J. Howard Howe as administrator and appointed George T. Miller as his successor, and directed

that Howe turn over to Miller all moneys and property belonging to said estate, and then expressly recited: "That the exhibit of J. Howard Howe, administrator, marked 'Statement of J. Howard Howe, administrator, with the will annexed, in re presentation and disposition of claims,' filed Apr. 4th, 1908, in the probate court of Nez Perce county, Idaho, be and the same is hereby approved and allowed as rendered and presented save and except as to the items . . . . relating to claims of the Lewiston National Bank for, respectively, $10,000, $5,000, $10,000, and $6,016.75, which said items are not allowed and approved as rendered and presented by said administrator in said exhibit, but on which the order of approval has as to each thereof been vacated, set aside and held for naught, by an order this day made and entered herein." This order then accepted the resignation of Howe, appointed his successor, directed him to turn over the property of the estate to his successor, and approved all of his account except the matters relating to the claims of the Lewiston National Bank, respondent herein.

In reviewing this order in connection with previous orders made by the probate court, this court held that such claims were pending claims upon the making of such order. (16 Ida. 201, 101 Pac. 723.) Referring also to the report made by Howe on May 25th, it shows that it embraced matter and acts of the administrator subsequent to his former report, and was a final account showing the receipt of his successor for the property belonging to said estate, and was made in accordance with the provisions of the order of April 30th, and in no way referred to the claims of the bank, thus leaving such claims in the same condition in which they were at the time the order of April 30th was made. The approval of the report filed May 25th ended Mr. Howe's connection as administrator with such estate, and was final as to his accounts except on such matters as had not been disposed of and were continued for future consideration. The probate court in approving the report of Howe as administrator and accepting his resignation and appointing his successor did not thereby approve claims filed against said estate which were expressly

reserved for future consideration; neither was it necessary for the probate court to finally dispose of pending claims against such estate, before the court had power to accept the resignation of the administrator or appoint his successor.

It is next contended that the district court erred in rendering judgment against the appellant estate in the aggregate sum found due upon the contested claims. Under this contention it is claimed that the only judgment the district court could render was to order the probate court to allow such claims, and that any heir or creditor of said estate, notwithstanding such order or judgment of the district court, would have the right to contest said claims at any time before they were passed upon in settling the final account of the administrator. In the case of *In re McVay's Estate*, 14 Ida. 64, 93 Pac. 31, this court very fully discussed the question of practice on appeal to the district court from the probate court in probate matters and said: "Whatever judgment may be entered in the district court is to be certified back to the probate court for execution in accordance therewith."

When an account rendered by an administrator comes on for hearing, everything contained in such account also comes on for hearing including listed claims, and when an order is entered approving such account such order approves everything contained in such account. If, however, such account is not approved *in toto*, and claims listed in such account are rejected and disallowed upon objection and protest of heirs or creditors of said estate, and such matter is thereafter appealed to the district court and there litigated and tried, and a judgment rendered in favor of the claimants, such judgment establishes the claim in the same manner as if it had been allowed by the executor or administrator and the probate judge; and the judgment must be that the executor or administrator pay in due course of administration the amount ascertained to be due. A certified transcript of the judgment must be filed in the probate court. No execution must issue upon such judgment, nor shall it create any lien upon the property of the estate or give to the judgment creditor any priority of payment. In other words, such claim by passing

to judgment becomes an acknowledged debt of the estate to be paid in due course of administration.

Referring to the judgment in this case, it is for the aggregate amount found by the district court to be due the respondent upon such claims, and is rendered against the appellant as administrator for such sum, and directs that such judgment is to be paid in due course of administration of said estate. We see no reason why this judgment is not correct in form or why it would have been necessary to render a separate judgment on each one of the specific claims. They were all alleged to be due the same claimant by the same estate, and while the findings of the court specified the amount due upon each, yet there is no reason why the judgment should be a separate judgment upon each claim. In any event, we are unable to see how the appellant could in any way have been prejudiced by the form of the judgment.

It is also contended that the claims involved in this case are barred under the provisions of sec. 4071 of the Rev. Codes. This section in part is as follows: "If a person against whom an action may be brought die before the expiration of the time limited for the commencement thereof, and the cause of action survive, an action may be commenced against his representatives, after the expiration of that time, and within one year after the issuing of letters testamentary or of administration."

It is apparent that the provisions of this section were not intended to shorten the time within which an action may be brought, under the general provisions of the statute, but were intended to extend such time in certain cases; that is, where at the time of a party's death there is not one year left of the period of limitation prescribed by the general statutes after the issuing of letters, the claimant shall have at least one year therefrom, and thus to this extent this section extends rather than shortens the period. If, however, at the time of issuing letters more than one year is left of the period of limitation prescribed by the general statute, then this statute does not shorten that period, and in such a case it has no effect whatever.

In the case of *McMillan v. Hayward*, 94 Cal. 357, 29 Pac. 774, the supreme court of that state had under consideration sec. 353 of the Code of Civil Procedure of that state, which is identical with sec. 4071, *supra*, and held:

"The evident purpose of sec. 353 is to secure to a party who has a cause of action against a decedent one year after the appointment of a legal representative within which to bring his action. This may or may not have the effect of extending the time. If it be necessary in order that such person shall have one year after the appointment of a legal representative, then suit may be brought after the expiration of the general limitation; otherwise this section does not have, nor was it intended it should have, any effect whatever upon his rights. Such construction does not shorten his time, as limited by the general statute. It simply leaves him to that statute, because it was not necessary to extend the time in order to give him his year."

Referring to the notes upon which the claims involved in this case are based, we find that the first note was dated April 1, 1904, and payable on demand; the second, March 30, 1906, payable on demand; the third, dated June 13, 1906, payable on demand; the fourth, dated December 29, 1905, payable on demand. The limitation for commencing an action founded upon these notes is five years, as provided by Rev. Codes, sec. 4052. The record in this case shows that the deceased died March 2, 1907. Letters testamentary were issued April 30, 1907. Notice to creditors was ordered May 11, 1907, and the first publication was made May 12, 1907, and the claims were presented and allowed by the administrator and judge on November 16, 1907.

The order vacating the allowance of the judge was made April 30, 1908. The claims were listed by the administrator supplementary to his account of March 14, 1908, such supplementary list filed April 4, 1908. Objections were made to the allowance of these claims and they were set for hearing and have been under contest ever since. From this record it appears that on November 16, 1907, at the time such claims were allowed by the administrator and the probate judge,

the general statute of limitations had not run against any of these notes; neither had such statute run at the time objections were made by the appellants to the allowance of such claims and the claims were set for hearing. We are unable to find any statutory authority for the contention of the appellant that it was the duty of the respondents to have their claims either allowed, or rejected and suit brought thereon within one year from the date of the issuing of the letters of administration. That is not what is meant by the provisions of sec. 4071, *supra.*

It is next contended that the allowance of the claims in controversy by J. Howard Howe, while he was administrator, was a nullity, because he was a coguarantor with the deceased for their payment and was also a stockholder in the lumber company, the principal debtor, and by reason of such facts his interest was adverse to the interests of the estate, and the approval of his account as administrator would be equivalent to the payment of his own obligation. It will be observed that the allowance of respondent's claims by Howe as administrator was set aside by reason of objections made by heirs of the deceased, and that such claims thereafter were heard upon trial both in the probate and the district court, and the respondent was required to prove its claims. The allowance, therefore, of Howe, whether valid or invalid, in no way affected the respondent's right to recover upon said claims against said estate. As said by this court (16 Ida. 201, 101 Pac. 723, *supra*) : ''The mere fact that such claim has been previously allowed by the probate judge would not affect such claim upon such hearing, except to cast upon the heir the burden of proof, as the former allowance of such claims would become evidence *prima facie* of the claim. The order, however, of the probate judge setting aside the former allowance was not equivalent to a disallowance of such claim but left such claim as still pending against said estate.'' But in addition to this reason we do not believe that the allowance of such claims by Howe rendered said claims void or uncollectible. Howe was appointed administrator upon petition of the heirs. He had no claim against the estate and made no claim

by reason of the notes in controversy in this case. He had not paid said notes; therefore, was not a creditor or a claimant against said estate. Before he could have been a claimant against said estate on account of such notes it would have been necessary for him to have paid such notes; and even if it be conceded that he was a creditor or might become a creditor of said estate, still such fact would not have disqualified him from acting as administrator or rendered said claims void or uncollectible. (Rev. Codes, sec. 5351.)

It is next contended that the presentation of such claims to Howe and his allowance of the same *in toto* while he was equally liable as guarantor and also as a stockholder of the principal debtor, the lumber company, and the fact that the bank as claimant and Howe as administrator had the same attorney, in resisting the motion of the heirs to vacate such allowance amounted to a collusion to defraud the estate of its rights to indemnity against the principal debtor, and the right to contribution against Howe as coguarantor.

We think that there can be no question but that the contract of guaranty indorsed upon the claims in controversy in this case and signed by Colby, Coryell and Howe is a joint and several obligation of said guarantors. The contract, "For value received I hereby guarantee the payment of the within note and waive protest, demand and notice of nonpayment thereof," is a several as well as a joint obligation of each person who executed such contract. It is expressly provided by subd. 7 of sec. 3474 of the Rev. Codes, as follows, "Where an instrument containing the words, 'I promise to pay,' is signed by two or more persons, they are deemed to be jointly and severally liable thereon." In construing such promises the courts have, as a rule, reached the same conclusion as is announced in this statutory provision. (14 Am. & Eng. Ency. of Law, 1160; 1 Daniel on Neg. Instruments, sec. 104; 2 Page on Contracts, sec. 1134; 1 Parson on Contracts, p. 27.) If, then, the contract of guaranty was several, the obligation of Coryell to pay became absolute upon default of the principal, the lumber company. (*Armstrong v. Slick,* 14

Ida. 208, 93 Pac. 775; *Bagley v. Cohen*, 121 Cal. 604, 53 Pac. 1117.)

The signers of this guaranty were under an absolute agreement to see that the maker paid the notes at maturity. The contract of guaranty was absolute and not conditional. If the maker failed to pay the note when due, the contract of guaranty was broken and the holder of such notes had a right of action against each or all of said guarantors. The holder of such note was under no obligation to pursue the maker or use any diligence whatever to enforce the collection of said note against the maker, or to give notice to the guarantors of the nonpayment of said note. (*Roberts v. Hawkins*, 70 Mich. 566, 38 N. W. 575.) In this latter case the court very exhaustively deals with the nature and extent of a contract of guaranty, and in the course of the opinion says: "A guaranty is held to be a contract by which one person is bound to another for the due fulfillment of a promise or engagement of a third party. (2 Pars. Cont. 520.)" And the court also quotes with approval from the case of *Brown v. Curtiss*, 2 N. Y. 226, as follows:

"The undertaking of the defendant was not conditional, like that of an indorser, nor was it upon any condition whatever. It was an absolute agreement that the note should be paid by the maker at maturity. When the maker failed to pay, the defendant's contract was broken, and the plaintiff had a complete right of action against him. It was no part of the agreement that the plaintiff should give notice of the nonpayment, nor that he should sue the maker, or use any diligence to get the money from him."

In the case of *Hungerford v. O'Brien*, 37 Minn. 306, 34 N. W. 161, the supreme court of Minnesota had under consideration a guaranty in the following language: "For value, I hereby guaranty the payment of the within note to Cassie Hungerford or bearer"; and the court says: "The guaranty of 'the payment of the within note' imported an undertaking, without condition, that, in the event of the note not being paid according to its terms,—that is, at maturity,—the guarantor should be responsible. The nonpayment of the note at ma-

turity made absolute the liability of the guarantor, and an action might at once have been maintained against him without notice or demand.'' The principle thus announced is in accord with the general weight of authority. (*Delsman v. Friedlander*, 40 Or. 33, 66 Pac. 297; *Johnson v. Charles D. Norton Co.*, 159 Fed. 361, 86 C. C. A. 361; *Hoyt v. Quint*, 105 Iowa, 443, 75 N. W. 342.)

When, therefore, claims based upon said notes were presented to Howe as administrator of the estate of Coryell, and Howe allowed the same, he did no more than recognize the legal liability of the estate of Coryell, under the contract of guaranty. There was no reason why such claims should not have been allowed, in so far as the contract of guaranty was concerned, and in making such allowance the administrator merely recognized the liability of the estate under the contract of guaranty.

The statement embraced in the last objection, to the effect that the bank as claimant and Howe as administrator had the same attorney in resisting the motion of the heirs to vacate such allowance, is not borne out by the record. The uncontradicted evidence in this case shows that James E. Babb was the attorney for J. Howard Howe, administrator, and that he had nothing whatever to do with the presentation or allowance of the claims of the respondent; that after Mr. Howe's resignation as administrator and the appointment of Miller, then Mr. Babb became attorney for the bank in prosecuting such claims. There is nothing in the record in this case which even tends to show any collusion or fraud in the allowance or prosecution of the respondent's claims.

The fifth contention of appellant as to the contract being joint and not several, has heretofore received attention. It is next contended that before the bank could recover upon the claims involved in this case it was necessary to prove that the principal debtor, the lumber company, was insolvent and unable to pay said claims, and that it was also necessary to show that the claims could not be collected from either the lumber company or Howe in order to refute the evidence of collusion between the respondent and Howe. This is a most

remarkable contention, and, as we view the case, is founded upon surmise rather than the facts as disclosed by the record. As heretofore shown, the contract of guaranty entered into by Coryell, as one of the guarantors, became absolute upon the failure of the lumber company, the principal debtor, to pay the note; and when such obligation became absolute, no duty was imposed upon the bank to pursue the principal debtor, but the bank had its option to resort to the contract of guaranty and this it did, and the fact that Howe as administrator recognized this contract of guaranty does not establish the fact that he was acting in collusion with the bank in order to injure the estate of Coryell or take from such estate property for which it was not legally liable.

There is no equitable principle to which our attention has been directed, and none suggested by the facts, which would require the bank to pursue the principal debtor, the lumber company, before it attempted to enforce the contract of guaranty. No doubt when the bank loaned the money, to secure which the notes involved in this case were given and the contracts of guaranty entered into, the bank relied upon such contracts of guaranty to the extent of the financial responsibility of the guarantors as security for such debts; and the bank had a legal right to pursue such contracts in order to recover the amount due upon such obligations, and no duty was imposed upon them to select any one of the debtors rather than any other one, against whom to enforce such obligations. There is no pretense in this case that the appellant was not legally obligated to pay the claims involved in this case upon the contract of guaranty, unless they have been released therefrom by the fact that Howe, a coguarantor acting as administrator of the appellant estate, allowed such claims against said estate, or because a collusion was shown to exist between the bank and Howe, for the purpose of compelling the estate to pay such claims, or because the contract of guaranty was joint, and upon the death of Coryell he thereby became released from said obligation. Whether Howe and Colby, as joint guarantors with Coryell, are liable to the appellant estate for their contributive share is not involved in this case. The

death of Coryell would not release his estate from its liability, under the contract of guaranty, or pay the debt.

Counsel for appellant has exhaustively presented this case both in oral argument and brief. The questions upon which he relies for a reversal are in the main theoretical and technical. We have made an exhaustive examination of this case and find no error in the record which calls for a reversal. The judgment is *affirmed.* Costs awarded to respondent.

Sullivan, C. J., and Ailshie, J., concur.