## LANGROISE v. CUMMINGS.

### No. 9770.

Circuit Court of Appeals, Ninth Circuit.
Nov. 29, 1941.

Rehearing Denied Jan. 14, 1942.

---

[1] Under the terms of the agreement the R. F. C. was entitled to receive 4% refunding bonds in the amount of the loan.

Sam S. Griffin, William H. Langroise, and W. E. Sullivan, all of Boise, Idaho, for appellant.

Richards & Haga, Oliver O. Haga, J. L. Eberle, and Charles H. Darling, all of Boise, Idaho, and T. Pope Shepherd, of Chattanooga, Tenn., for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

Appellant is the executor of the estate of James McDonald, Jr., who died in Idaho on July 2, 1936. Appellee Cummings presented a claim against the estate and upon its disallowance he sued, recovering a judgment from which the executor appeals.

The estate consists of McDonald's share in a testamentary trust set up by his father, James McDonald, Sr., who died in 1915. The instruments creating the testamentary trust provided for the payment of an annuity to the son, and as those instruments were later construed McDonald was entitled to receive currently all the income accruing to his undivided half interest in the corpus.[1] This undivided interest was not to be turned over to him until 1943. The corpus of the trust, valued at several million dollars, was invested largely in stocks and bonds.

Prior to 1931 McDonald, Jr., became heavily indebted. To secure some of these debts he had made assignments of the income and annuities and in some instances the assignments included his share of the trust corpus itself. At least one creditor who had obtained judgment was threatening to levy execution upon the share, and there were threats of action from other quarters. Efforts of McDonald to borrow on the security of his interest were unavailing and in his extremity he turned to Cummings, a Tennessee friend of long standing.

At a meeting held in Chattanooga in December, 1931 the two men entered into three contracts in writing. By the first McDonald assigned to Cummings his interest in the annuities, income and corpus of the testamentary trust as security for a loan of $50,000 evidenced by three promissory notes. These bore interest and provided for the payment of reasonable attorney's fees in the event of suit. Cummings was appointed attorney in fact to receive all money or property belonging to McDonald under the trust, and the trustees were directed to pay the same to him.

The second contract, which we will call the Cummings trust agreement, deals with the application of "the amount received as surplus income over and above the amount necessary to pay debts secured by assignments." So far as here material it provides for the payment by Cummings, out of such surplus income, (a) of an annuity of $2,000 per month to McDonald and his family, (b) of the necessary expenses of Cummings' "agency and trusteeship", and (c) for the application of the balance to the payment pro rata of the claims of certain listed unsecured creditors. The third contract provides for the appointment of Leo J. Falk to act as agent of Cummings in Idaho. For his services Falk is to receive $2,500 a year to be paid by Cummings out of the $5,000 which McDonald has by way of compensation agreed to pay Cummings. There is a further provision that "in case there should be a material falling off of the income now estimated to be paid by the trustees to Cummings, as agent aforesaid, all the parties hereto agree that each shall take a corresponding reduction in the allowances to be paid under this agreement and the agreements herein referred to," (namely, the assignment and the Cummings trust agreement).

Cummings at once distributed among the creditors the $50,000 which he had loaned McDonald. During the ensuing years he received, as trustee, the large sums periodically paid as income and annuities from the testamentary trust. He personally made advances to himself as trustee, and as trustee he borrowed with the approval of McDonald various sums from banks and others. All these funds he disbursed, in part directly to McDonald and in part to creditors to whom he made in all three general distributions. Smaller sums were disbursed in payment of expenses of his trust. In the course of these transactions he effected a number of settlements with creditors, resulting in substantial reductions in their claims. The record shows that he applied himself faithfully and with

---

[1] McDonald v. Maxwell, 56 App.D.C. 287, 12 F.2d 822.

diligence to his duties as trustee. In 1932, and again in August, 1935, he made reports to McDonald showing in detail all receipts and disbursements, and these accounts had the approval of McDonald in writing. The monies received and paid out, as shown by the last account, amounted in round figures to $200,000.

Meanwhile the income from the testamentary trust had declined, and on August 5, 1935 there was a complete stoppage both of income and annuities because of a notice of distraint served on the testamentary trustees inspired by an alleged failure of McDonald to pay federal income taxes. Thereafter and until McDonald's death, prior to which the payments had not been resumed, Cummings personally advanced to McDonald for living expenses sums aggregating close to $6,000. During the same period he made further advances to his trust. In November, 1935, McDonald agreed in writing that the sums advanced him by Cummings since the stoppage of the annuity payments, and the sums to be thereafter advanced until the resumption of such payments, were to be secured by the 1931 assignment.

Thus matters stood when McDonald died. Two of the notes given Cummings in 1931 were unpaid. The third had been paid by the testamentary trustees, but Cummings with McDonald's sanction had used the proceeds to effect a highly advantageous settlement with a secured creditor; and McDonald had given a new note in its place. The unpaid principal of the three notes exceeded $51,000, and there were large arrearages of interest. Also outstanding were the advances by Cummings to himself as trustee, certain unpaid expenses, and the several loans by third persons to the trusteeship for which Cummings had individually obligated himself and most of which he repaid out of his own pocket. There were no funds in Cummings' hands as trustee to apply on this varied indebtedness.

Some time after his appointment the executor obtained from the testamentary trustees the surrender of securities representative of McDonald's share of the testamentary trust. At the same time there was turned over to the executor the sum of $34,166.20, the equivalent of the annuities and income accruing to McDonald prior to his death, payment of which had been temporarily withheld because of the assertion of the federal lien. This was in 1938. Meanwhile Cummings had presented his claim. It consisted of two groups of items: (a) direct obligations of McDonald comprising his notes and the advances made to him, all of which were confessedly secured under the 1931 assignment of corpus; and (b) the unpaid so-called trustee items, including an item for trustee compensation accruing prior to McDonald's death. The total claim, exclusive of interest, was in the neighborhood of $79,000. The claimant reserved his right to enforce in the proper forum his rights under the 1931 assignment and contracts.

Cummings' claim was presented within the statutory time but was not acted upon by the executor until two years and eight months thereafter when it was rejected in toto. Suit was instituted early in 1940, within three months after the rejection. In his answer the executor set up a number of defenses, the chief ones argued here being (1) the statute of limitations; (2) absence of personal liability of McDonald for the so-called trustee items; and (3) alleged failure of the claimant to comply with required formalities in presentation.

1. It is conceded that when McDonald died and when the claim was later presented none of the items in suit was barred. The argument is that the running of the general statute of limitations is not suspended by death, and that when the suit was brought the great bulk of the items had become barred by the provisions relating generally to the time of the commencement of civil actions. These prescribe the periods for the commencement of various actions "except when, in special cases, a different limitation is prescribed by statute." § 5-201.[2] The general statutes further provide that "when the commencement of an action is stayed by * * * statutory prohibition the time of the continuance of the * * * prohibition is not part of the time limited for the commencement of the action." § 5-234.

We turn to the provisions of the Idaho Code dealing with the probate of estates. The holder of a claim may not maintain any action thereon unless the claim is first presented to the executor, except that an action may be brought to foreclose a mortgage or lien against property of the estate

---

[2] The references here are to the Idaho Code, 1932.

where all recourse against other property is expressly waived. § 15-611. Claims arising upon contract, whether due or not, must be presented within six months after the first publication by the executor of notice to creditors, and if not so presented they are barred. § 15-601, 15-602, 15-604. The executor is required to pass upon the claim within sixty days after its receipt, but if the claim is presented within the six months' period it is in time though not acted upon until after the expiration of the period. § 15-607. In the event of rejection of a claim the holder must bring suit against the executor within three months of its rejection, otherwise it is barred. § 15-609.

■ These provisions would seem to present a statutory scheme superseding in cases of death the general limitations applicable to obligations not barred at the time of death. They prescribe a "different limitation" within the terms of § 5-201, supra. This view is virtually compelled by the decision of the state court in Wormward v. Brown, 50 Idaho 125, 294 P. 331, holding that an action will not lie on a presented claim until it has been disallowed. And see Flynn v. Driscoll, 38 Idaho 545, 223 P. 524, 34 A.L.R. 352. We need not enlarge upon the insuperable difficulties which may conceivably beset creditors if a contrary view were to be entertained. See Quivey v. Hall, 19 Cal. 97; Smith v. Hall, 19 Cal. 85.

■ Appellant points to § 5-231 of the Idaho Code, providing that if a person against whom an action may be brought die before the expiration of the time limited for the commencement thereof, and the cause of action survive, an action may be commenced against his representative within one year after the issuance of letters testamentary. It is argued that this statute, as construed in Miller v. Lewiston National Bank, 18 Idaho 124, 108 P. 901, necessarily demonstrates that the general statute is applicable to claims against estates. We need not stop to analyze the Miller case beyond saying it throws little or no light on the problem before us; and as for the statute we have not been able to reconcile it with the specific provisions of the probate code, as construed by the state court, unless it is limited in its application to claims which need not be and are not filed with the executor or to suits for relief of a special nature not involving money demands.

Counsel cite text writers and numerous cases from other jurisdictions bearing on the subject; but a consideration of the rules prevailing elsewhere would serve no purpose other than to add to the length of the opinion.

2. The trial court determined that in respect of the bulk of his claim Cummings has a lien upon the assets and securities turned over to the executor by the testamentary trustees, and directed that these be impounded until the lien is satisfied. The balance of the claim, consisting of most of the trustee items, was adjudged to be a general liability of the estate. In the latter respect it is contended that the court was in error.

The executor argues that the fund of which Cummings had been made trustee in the 1931 agreement consisted solely of the excess income over and above the amount necessary to pay debts secured by assignment. It is not disputed that Cummings had the right of recoupment out of this fund for the expenses and other indebtedness of the trusteeship, but the executor complains that instead of applying the funds that came into his hands to these purposes Cummings exhausted them for other purposes; and now, it is said, Cummings can have no claim against McDonald personally or against his estate.

We think it is clear that, as the arrangement was interpreted by the two men in actual practice, the trust fund included all income and annuities payable to Cummings by the testamentary trustees. Cummings did not apply these moneys to the retirement of the trustee obligations or to the discharge of his notes; but as trustee he handled the total fund and disbursed it in the way we have heretofore indicated, and in this he had the approval of McDonald. There is no mystery in the reason for the course pursued. Had Cummings applied the moneys received to the retirement of his own notes and to the payment of the expenses and borrowings of the trusteeship McDonald would largely have been deprived of the income necessary for his own support, and presumably his creditors again would have become restive and troublesome. What Cummings did as trustee was rather obviously done for McDonald's benefit, and certainly with his sanction.

■ As we read the executor's testimony, he came into possession of accumulated income and annuities which, except

for the temporary tax distraint, would have been paid to Cummings. Why these funds were not turned over to Cummings we are not informed. They were ample in amount to discharge all trustee obligations and to enable Cummings to wind up his trust. If there is any reason why in equity and good conscience he was not entitled to recourse against this amount it has not been suggested and does not occur to us. We believe the relief granted by the trial court was not as full as that to which Cummings was entitled; but of this the executor is in no position to complain. Under the circumstances there was no reversible error in decreeing that the trustee items be paid in due course of the administration of the estate, nor in adjudging part of these items to be lienable.

3. The state statute, § 15-608 Idaho Code, provides that if the claim is founded on a note or other instrument, a copy of such instrument must accompany the claim. In presenting his claim Cummings furnished the executor with copies of the notes and other supporting documents. Copies of the contracts and agreements of 1931 were not attached, but the claim states that copies of them "are now in the hands of the executor", and that any further data requested will be furnished. The principal objection to the sufficiency of the claim, as urged on the trial below, was predicated on the failure to attach copies of these instruments. The court was of opinion that the statute had been substantially complied with, particularly as it was proved that the executor was already in possession of copies.

■ On the appeal the executor does not appear to argue the point, contenting himself with certain objections of a highly technical nature directed toward some of the trustee items. It is said, for example, that those to whom Cummings was obligated as trustee should have presented their claims to the executor, and that since they did not the claims are barred. These parties, however, to the extent they had not already been paid by Cummings—and most of this indebtedness had been so paid—elected to look to Cummings, who was personally and primarily obligated in that respect. Under the circumstances, Cummings' only protection lay in presenting his claim to the executor, who, as already observed, was in possession of funds properly chargeable with trustee indebtedness.

■ A note to the Hamilton bank which Cummings had paid was included as one of the trustee items. The check used in payment accompanied the claim, but no copy of the note itself was attached. It is said that in this respect the claimant failed to comply with the statute. But we think the point is not well taken; the claim was not founded on the note but on the fact that Cummings had paid it.

■ There are other objections relating to supposed infirmities in presentation, but we will not pursue them further. They appear largely to be afterthoughts and are without substance. The executor made no request for the clarification of any item or for additional documents or information, and there appears to have been no need for his doing so. We take it that the provisions relating to the form of claims are to be applied in the light of their purpose, which is to enable the executor and the judge intelligently to pass upon claims presented.

4. Two other contentions will be noticed. One relates to the compensation of Cummings as trustee, the other to the allowance of attorney's fees.

■ The judgment includes trustee compensation at the rate of $2,500 a year to the time of McDonald's death. The executor says this amount should have been scaled down in line with the provision for reduction in the event of a material falling off of the income "now estimated to be paid by the trustees to Cummings." A material falling off undoubtedly occurred. Cummings testified that no estimate was made of the probable amount he would receive from the testamentary trust; and, while his version of the matter is not very convincing to us, it does lend some support to the finding. The judgment in this respect has further support in the fact that Falk's claim for compensation, directly presented for his half of the entire sum, was allowed by the executor in full. The executor had been the decedent's legal adviser for a number of years, and the action taken on Falk's claim is indicative of the practical understanding of the arrangement. The agreement to scale down appears to have been applicable to McDonald as well as to the other two parties; and McDonald accepted no considerable reduction in his allowance prior to the summary stoppage of all payments less than a year before his

death.[3] There is competent evidence that McDonald had personally agreed to pay the compensation, and we entertain no doubt that Cummings amply earned it if that makes a difference. On the whole, we are not able to say that the holding of the court in this respect was clear error.

■ There was an allowance of $10,000 for counsel fees of which the court allocated $7,500 to the suit on the notes. The balance seems to be for legal services rendered Cummings as trustee. As already seen, the 1931 trust agreement provided for the payment of the expenses of the trusteeship, and there is evidence that Cummings as trustee found it necessary to employ counsel and that he incurred obligations in this respect. He was entitled to reimbursement therefor out of funds properly allocable to him as trustee. We do not believe the total amount allowed was excessive, and there is enough evidence in the record on the subject to support this phase of the judgment.

Affirmed.

---

3 Allowances to McDonald and family for the 44 months ending August, 1935, paid by Cummings, were $85,568.52.